# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

SEAN TURZANSKI,

   Plaintiff,

v.

COUNTY OF BURLINGTON, et al.,

   Defendants.

Civ. No. 15-8866 (RBK) (JS)

**OPINION**

**ROBERT B. KUGLER, U.S.D.J.**

## I. INTRODUCTION

This matter comes before the Court by way of Plaintiff Sean Turzanski's complaint against Defendants County of Burlington, Lawrence Artis, and Sergeant Nunn, asserting violations of the First, Fourth, and Fourteenth Amendments, under 42 U.S.C. § 1983. Presently before the Court is Defendants' Motion for Summary Judgment (ECF No. 42). For the reasons set forth below, the Court will **GRANT IN PART**, Defendants' motion.

## II. BACKGROUND

At all times relevant to the allegations in the complaint, Plaintiff was a pre-trial detainee at the Burlington County Correctional Facility. On or about December 9, 2013, the New Jersey Superior Court had committed Plaintiff to pretrial detention as he could not make bail after receiving charges of theft and robbery.

Shortly thereafter, on or about December 24, 2013, Plaintiff fought with two inmates, although the parties dispute who initiated the fight. After a disciplinary hearing, Plaintiff received a sanction of fifteen days in administrative segregation from December 24, 2013, until January 7,

2014. During that time period, Plaintiff was able to observe another inmate, Robert Taylor.[1] Plaintiff contends that he witnessed Mr. Taylor's health decline over a number of days until Mr. Taylor laid on the floor in blood, feces, and urine, with discolored extremities. According to Plaintiff, jail staff ignored his and Mr. Taylor's cries for help, as well as the unbearable smell, and threw away Mr. Taylor's meals because Mr. Taylor could not get off the floor to eat them. It was not until December 30, 2013, that jail staff checked on Mr. Taylor and attempted to resuscitate him but found that he had been dead for a significant period of time.

Plaintiff then mailed letters to the media and other persons detailing the events and conditions leading to Mr. Taylor's death, but testified that only one letter had reached its intended recipient, the prosecutor's office. On January 26, 2014, Plaintiff gave another letter to a soon to be released inmate, Edward Forchion, who forwarded the letter to various news and media outlets.

Shortly thereafter, on January 29, 2014, Plaintiff encountered Defendant Lawrence Artis in the jail's recreational area. According to Plaintiff, Defendant Artis told him to "keep [his] fucking mouth shut" and that Plaintiff did not "know what [he] saw," ostensibly referring to Mr. Taylor. (ECF No. 42-4, at 13, 70:16–18). Defendant Artis then allegedly had officers "put [Plaintiff] against the wall, told [Plaintiff] to shut the fuck up, handcuffed and dragged [him] back to" the segregation unit. (ECF No. 42-4, at 13, 70:20–24).

Jail officials then charged Plaintiff with disrupting or interfering with the security of a correctional facility and conducted a disciplinary hearing on January 31, 2014. Officials found Plaintiff guilty and sanctioned him to fifteen days in administrative segregation from January 29, 2014, until February 12, 2014. According to Plaintiff, on an unknown date during that period, an unidentified inmate assaulted him, resulting in permanent injuries to his right pectoral tendon.

---

[1] Mr. Taylor's estate or any representative thereof is not a party to this case.

Plaintiff filed suit against three named Defendants, the County of Burlington, former warden Lawrence Artis, and "Sergeant Nunn," in their official and individual capacities. Plaintiff's complaint brings a 42 U.S.C. § 1983 claim for retaliation under the First Amendment (Count One) and a § 1983 claim for unreasonable search and seizure under the Fourth Amendment and a denial of due process under the Fourteenth Amendment (collectively Count Two).

## III. STANDARD OF REVIEW

A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Tolan v. Cotton,* 572 U.S. 650, 656–57 (2014). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Cotton,* 572 U.S. at 657. The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof," the moving party may discharge its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

If the moving party meets its threshold burden, the opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence that may show that genuine issues of material fact exist). The non-moving party must at least present probative evidence from which the jury might return a verdict in his favor. *Anderson,* 477 U.S. at 257. Where the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at

trial," the movant is entitled to summary judgment. *Celotex*, 477 U.S. at 322. "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation,* 912 F.2d 654, 657 (3d Cir. 1990); *see also Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.,* 470 F.3d 535, 538 (3d Cir. 2006) ("To prevail on a motion for summary judgment, the nonmoving party needs to show specific facts such that a reasonable jury could find in that party's favor, thereby establishing a genuine issue of fact for trial.").

## IV.   DISCUSSION

### A. Municipal Liability Under § 1983

The County of Burlington argues that summary judgment is appropriate because Plaintiff has failed to establish his claim against a local government entity under 42 U.S.C. § 1983. To succeed on a § 1983 claim, a plaintiff must allege two things: first, a violation of a right under the Constitution, and second, that a "person" acting under color of state law committed the violation. *West v. Atkins,* 487 U.S. 42, 48 (1988); *Piecknick v. Com. of Pa.,* 36 F.3d 1250, 1255–56 (3d. Cir. 1994)). The Supreme Court has established that § 1983's definition of "person" includes municipalities and other local government entities. *Monell v. Dep't of Soc. Servs. of N.Y.,* 436 U.S. 658, 690 (1978).

A plaintiff may not, however, hold a local government unit "liable for the unconstitutional acts of its employees on a theory of *respondeat superior*." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014). To hold such an entity liable under § 1983, plaintiffs must demonstrate that a local government unit adopted a policy or custom and that such policy or custom had been "the moving force" behind the deprivation of their constitutional rights. *See Monell*, 436 U.S. at 694.

Municipal policy generally involves a "statement, ordinance, regulation, or decision officially adopted and promulgated by [a local governing] body's officers." *Id.* at 690. A municipal

custom, although lacking the formal approval of a policy, refers to those official practices which are "so permanent and well settled as to constitute . . . the force of law." *Id.* at 691.

Under certain circumstances, a municipality's failure to properly train its employees and officers can amount to a "custom" under § 1983. *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989). When a plaintiff alleges that a policy "concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." *Thomas*, 749 F.3d at 222 (quoting *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quoting *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 409 (1997)).

The "first inquiry in any case alleging municipal liability under § 1983 is . . . whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Canton,* 489 U.S. at 385. The County of Burlington may satisfy its burden for summary judgment by showing "that there is an absence of evidence to support the nonmoving party's case." *See Celotex*, 477 U.S. at 325. Assuming *arguendo* that Plaintiff has properly alleged a violation of a constitutional right, he has failed to show that the County is a "person" acting under color of state law and committed that violation. *See West,* 487 U.S. at 48.

Plaintiff alleges that a local government unit "committed" a violation but fails to show that the County of Burlington's policies or customs resulted in the alleged violation. *See Monell,* 436 U.S. at 694. In fact, Plaintiff fails to address Defendants' arguments on this issue anywhere in their opposition. (ECF No. 48). Plaintiff fails to identify any specific county policies or customs that amount to deliberate indifference to the county's inhabitants. *See Carswell v. Borough of*

*Homestead*, 381 F.3d 235, 244 (3d Cir. 2004). Nor does Plaintiff produce any evidence to demonstrate a pattern of underlying constitutional violations. In fact, the only mention of a potential policy or custom anywhere in Plaintiff's opposition or complaint is that a policy required Defendant Nunn to tour the correctional facility three times per day which lacks any causal link to any of the alleged constitutional violations. (ECF No. 48-2, at 2). Accordingly, Plaintiff fails to raise a genuine issue of material fact as to whether, under § 1983, the County of Burlington violated any of his constitutional rights under color of state law.

**B. Fourth Amendment Claims**

Defendants Artis and Nunn argue that summary judgment is appropriate because the complaint and competent evidence in the record show that Plaintiff cannot maintain a § 1983 claim based on a violation of the Fourth Amendment. (ECF No. 42-2, at 20–22).

At the outset, it is difficult to discern Plaintiff's vague and conclusory arguments in support of a Fourth Amendment violation. The Court will construe Plaintiff's arguments to contend that Defendants Artis and Nunn violated Plaintiff's Fourth Amendment rights during Plaintiff's January 29, 2014, encounter with Defendant Artis, when unknown officers restrained Plaintiff and transferred him to administrative segregation. (ECF No. 42-4, at 13, 70:20–24).

As a preliminary matter, Plaintiff fails to specify how Defendant Nunn played any part in the January 29, 2014, encounter or Plaintiff's subsequent transfer to administrative segregation. (ECF Nos. 1, 48). Plaintiff only contends and offers proof that Defendant Nunn supervised the administrative segregation during a certain shift but does not allege that he supervised the officers who restrained Plaintiff in the recreation area. (*See* ECF No. 1; ECF No. 48-2, at 6).

More fundamentally, however, the Supreme Court has held that the Fourth Amendment's protections have significantly limited applicability in the context of incarceration. *Hudson v.*

*Palmer*, 468 U.S. 517, 536 (1984); *see also Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001) ("The *Hudson* court confirmed that the Fourth Amendment right to be free from unreasonable searches and seizures is inconsistent with incarceration"). A person is entitled to challenge a seizure "under the Fourth Amendment when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement" through intentionally applied means. *Brendlin v. California*, 551 U.S. 249, 254 (2007) (internal quotation marks omitted).

At the time of incident in the recreation room, the State of New Jersey had already terminated Plaintiff's freedom of movement through pretrial detention. Consequently, "he had already been 'seized' for purposes of the Fourth Amendment, and the Court cannot conceive of a situation in which an incarcerated inmate . . . could be subjected to a distinct Fourth Amendment seizure," at least under the record before this Court. *E.g., Goldhaber v. Higgins*, 576 F. Supp. 2d 694, 718 (W.D. Pa. 2007) (citing *Elliott v. Lynn*, 38 F.3d 188, 191, n. 3 (5th Cir. 1994) ("distinguishing between cell searches and seizures of prisoners through an official's use of excessive force, which *never* violate the Fourth Amendment, and body cavity searches of prisoners, which may violate the Fourth Amendment under certain circumstances")). Accordingly, as discussed in greater detail in the next section, regardless of how the officers restrained Plaintiff, they were unable to "re-seize" him under the Fourth Amendment. *Id*.

Moreover, to the extent that Plaintiff argues that the transfer to administrative segregation was itself an unlawful seizure, courts have specifically found that the Fourth Amendment's prohibition on unreasonable seizures does not apply to the transfer of a pretrial detainee from general population to a segregation unit. *E.g.*, *Ratigan v. Trogvac*, No. 08-1667, 2009 WL 648931, at *29 (M.D. Pa. Mar. 11, 2009); *see also De Jesus v. Odom*, No. 12-0306, 2012 WL 4023346, at

*5 (E.D. Wis. Sept. 12, 2012); *cf., e.g.*, *Brown v. United States*, No. 11-4421, 2014 WL 1407398, at *5 (D.N.J. Apr. 11, 2014) (holding similarly in the convicted prisoner context).

If there is more to Plaintiff's "Fourth Amendment claims, he certainly has not gone to great pains to explain his theories to the Court." *Goldhaber*, 576 F. Supp. 2d at 718; (*see* ECF No. 48-2, at 20–27) (devoting only a single, conclusory sentence to his Fourth Amendment claims). Accordingly, Plaintiff fails to raise a genuine issue of material fact as to whether, under § 1983, Defendants Artis and Nunn violated his Fourth Amendment rights under color of state law.

C. **Fourteenth Amendment Claims**

Defendants Artis and Nunn argue that summary judgment is appropriate because Plaintiff fails to raise competent evidence showing that Defendants subjected Plaintiff to, or caused Plaintiff to suffer, a deprivation of rights under the Fourteenth Amendment. (ECF No. 42-2, at 20–22). Although vague, the Court will construe[2] Plaintiff's arguments as setting forth a pretrial detainee excessive force claim under the Fourteenth Amendment.

After setting forth some applicable law and analytical frameworks, Plaintiff's entire analysis[3] on his Fourteenth Amendment claims, is set forth as follows:

> On January 26, 2014, Plaintiff penned a letter to various news outlets regarding the conditions surrounding the deaths of Robert Taylor and Jerome Iozzia. This letter was given to Edward

---

[2] To the extent that Plaintiff may be arguing that the transfer to administrative segregation itself, violated the Fourteenth Amendment, the Third Circuit held that, a "[p]rison must provide detainees who are transferred into more restrictive housing for administrative purposes *only* an explanation of the reason for their transfer as well as an opportunity to respond." *Stevenson v. Carroll*, 495 F.3d 62, 70 (3d Cir. 2007) (citing *Hewitt v. Helms*, 459 U.S. 460 (1983)) (emphasis added). The parties agree that Plaintiff received an opportunity to be heard regarding the January 29, 2014, incident with Defendant Artis, and an explanation for his transfer, through an official disciplinary hearing, prior to receiving a sanction of fifteen days in administrative segregation. (ECF No. 42-2, at 14). Accordingly, the Court rejects Plaintiff's conceivable Fourteenth Amendment claim on that basis.

[3] Plaintiff did not include citations to law or facts in this part of his brief.

> Forchion ("Forchion"), who was detained at Burlington County Jail and released sometime on January 26th, 27th, or 28th. Forchion also recorded a video in relation to the events described in Plaintiff's January 26th Letter.
>
> Soon thereafter on January 29, 2014, Plaintiff was approached by the Warden, defendant, Lawrence Artis, in the gymnasium and confronted about the allegations contained in Plaintiff's letter and Forchion's video. Artis allegedly told Plaintiff to "shut the [expletive] up, you don't know what you saw" and thereafter had Plaintiff thrown against a wall and beaten prior to being put into handcuffs and sentenced to fifteen (15) days in "SEG" unit, also known as disciplinary detention.
>
> Defendant Artis took retaliatory action against Plaintiff as a result of Plaintiff's exercise of his first amendment right to free speech whereby he authored a letter regarding the controversial deaths on inmates detained in BCJ. Further, defendant Artis directed the correctional officers to violate Plaintiff's right to due process by giving the orders to have him punished (thrown against a wall and beaten prior to being handcuffed) before he was able to have a disciplinary hearing regarding the alleged disruption of the facility as a result of the incident in the gymnasium.

(ECF No. 48, at 21–22).

The majority of Plaintiff's arguments appear to seek liability against Defendants Artis and Nunn in their supervisory capacity. As a general rule, however, government officials are not liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior. See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Monell,* 436 U.S. at 691; *Robertson v. Sichel,* 127 U.S. 507, 515–16 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of subagents or servants or other persons properly employed by or under him, in discharge of his official duties").

In general, there are only two ways in which supervisors may be liable for the unconstitutional acts of their subordinates. First, liability may attach if a supervisor, "with deliberate indifference to the consequences, established and maintained a policy, practice or

custom which directly caused [the] constitutional harm." *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). Under the second approach, a supervisor "may be personally liable if he participated in violating [] rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinates' unconstitutional conduct." *Estate of Moore v. Cumberland Cty.*, No. 17-2839, 2018 WL 1203470, at *4 (D.N.J. Mar. 8, 2018).

With those principles in mind, Plaintiff contends that Defendants subjected him to punishment, by ordering officers to beat and handcuff him during his January 29, 2014, encounter with Defendant Artis. As a pretrial detainee at the time of the incident, the Court considers his excessive force allegations under the Fourteenth Amendment's Due Process Clause, which prohibits the State from imposing punishment on those who have not yet been convicted of a crime, rather than the Eighth Amendment's prohibition against cruel and unusual punishment. *Bell v. Wolfish*, 441 U.S. 520, 535–39 (1979). Courts apply an objective standard when considering a pretrial detainee's claim of excessive force. *See Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472–73 (2015). Thus, "a pretrial detainee must show only that . . . [officers] purposely or knowingly used [force] against him" that was objectively unreasonable. *Id.* at 2473. This objectiveness "turns on the 'facts and circumstances of each particular case.'" *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). "A court must make this determination from the prospective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.*

Thus, the relevant inquiry is whether officers applied the force "in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Fuentes v. Wagner*,

206 F.3d 335, 345 (3d Cir. 2000) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). In making this inquiry, Courts should consider:

> (1) the need for the application of the force; (2) the relationship between the need and the amount of force that was used;" (3) "the extent of the injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of facts known to them; and (5) any efforts made to temper the severity of a forceful response.

*Baez v. Lancaster Cty.*, 487 Fed. App'x. 30, 32 (3d Cir. 2012) (per curiam) (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). The absence of injury does not, however, necessarily foreclose the inquiry. *Hudson*, 503 U.S. at 7; *Brooks v. Kyler*, 204 F.3d 102, 104 (3d Cir. 2000).

Nevertheless, the Constitution does not protect a pretrial detainee against an objectively *de minimis* use of force. *Reyes v. Chinnici*, 54 Fed. App'x 44, 48 (3d Cir. 2002) ("There exists some point at which the degree of force used is so minor that a court can safely assume that no reasonable person could conclude that a corrections officer acted maliciously and sadistically."); *cf. Lindsey v. O'Connor*, 327 Fed. App'x 319, 321 (3d Cir. 2009) (applying the *de minimis* force principle in the convicted prisoner context).

Here, although Plaintiff alleges in his brief that Defendant Artis "directed the correctional officers to . . . have him punished" by throwing "him against a wall and beaten prior to being handcuffed," he fails to refer or cite to any competent evidence regarding the alleged beating. (ECF No. 48, at 20–22). Nor does a generous review of the competent evidence before the Court reveal a beating in either the incident reports, disciplinary records, or deposition excerpts. In fact, Plaintiff's deposition testimony only alleges that Defendant Artis had officers "put [Plaintiff] against the wall, told [Plaintiff] to shut the fuck up, handcuffed and dragged [him] back to" the segregation unit. (ECF No. 42-4, at 13, 70:21–24).

Although discovery has ended, Plaintiff's counsel baldly asserts that Defendants tampered or edited video evidence in this matter[4] which contain two gaps totaling approximately two minutes, "where plaintiff was allegedly thrown against a wall, beaten and handcuffed." (ECF No. 48, at 26; ECF No. 48-3, at 2–3). Axiomatically, however, Counsel's unsubstantiated assertions of "fact" in a brief do not constitute evidence for the purpose of summary judgment. *E.g.*, *Versarge v. Twp. of Clinton N.J.*, 984 F.2d 1359, 1370 (3d Cir. 1993). For that reason, the Court also rejects Plaintiff's reliance on *Sorrell v. Tropican Atl. City Corp.*, and related cases, where the incomplete video evidence *failed to refute* otherwise competent evidence that created a genuine issue of material fact. No. 12-02369, 2014 WL 7336699, at *3 (D.N.J. Dec. 19, 2014); (ECF No. 48, at 25–26). In contrast, in the present case, Plaintiff fails to raise *any* competent evidence as to the alleged beating. Nor does the Court have any obligation "to scour the entire record to find a factual dispute." *E.g.*, *Dawley v. Erie Indemnity Co.*, 100 Fed. App'x 877, 881 (3d Cir. 2004).

As a result, Plaintiff merely alleges that Defendant Artis ordered certain officers to put Plaintiff against a wall and handcuff him. He does not raise any testimony or other competent evidence that he suffered injury or pain, much less any of significance. Standing alone, such acts are insufficient to support a claim that subordinate officers violated Plaintiff's rights to be free from excessive force under the Fourteenth Amendment. *See, e.g., Lindsey*, 327 Fed. App'x at 321 (grabbing and threatening inmate, without injury, was *de minimis* force); *Norton v. City of Marietta*, 432 F.3d 1145, 1156 (10th Cir. 2005) (per curiam) (grabbing and twisting of inmate's neck, causing pain, did not constitute excessive force); *Felder v. Diebel*, No. 10-343, 2012 WL 6690239, at *5 (W.D.N.Y. Dec. 21, 2012) (finding *de minimis* force where officer allegedly

---

[4] Defendants provided a certification that the cameras are motion based, and that it is not unusual for there to be gaps in footage.

grabbed inmate by the throat and slapped him twice, causing no injuries); *Brown v. Busch*, 954 F. Supp. 588, 597 (W.D.N.Y. 1997) (finding that an officer's pushing, shoving, and striking of an inmate was a de minimis use of force).

Without an underlying violation of the Fourteenth Amendment, Plaintiff cannot hold Defendants Artis and Nunn liable in their supervisory capacity. Additionally, as discussed above, Plaintiff fails to specify how Defendant Nunn played any part in the January 29, 2014, encounter or supervised the officers who restrained Plaintiff in the recreation area. (See ECF No. 1; ECF No. 48-2, at 6). Accordingly, Plaintiff fails to raise a genuine issue of material fact as to whether, under § 1983, Defendants Artis and Nunn violated his Fourteenth Amendment rights under color of state law.

### D. First Amendment Claims

Defendants Artis and Nunn argue that summary judgment is appropriate because Plaintiff fails to raise competent evidence showing that Defendants retaliated against Plaintiff for exercising his First Amendment rights to write to the press.

In order to state a First Amendment claim for retaliation, "a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006).

As to the third element, to establish a causal link, a plaintiff must usually show one of the following: (1) an unusually suggestive time proximity between the protected activity and the allegedly retaliatory action; or (2) a pattern of antagonism coupled with timing to establish a causal link. *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). If a plaintiff

makes neither showing, then he must show that, from the evidence in the record as a whole, "the trier of fact should infer causation." *Id*.

While temporal proximity is relevant in First Amendment retaliation cases, the "mere passage of time is not legally conclusive proof against retaliation." *Marra v. Phila. Housing Auth*, 497 F.3d 286, 302 (3d Cir. 2007); *Ambrose v. Twp. of Robinson, Pa.*, 303 F.3d 488, 494 (3d Cir. 2002). Furthermore, a plaintiff must allege and prove that the defendant had knowledge of the constitutionally protected activity. *See, e.g., Jordan v. Hastings*, No. 12-7932, 2013 WL 3810577, at *4 (D.N.J. July 22, 2013). Without such knowledge, a plaintiff cannot show that an adverse action was retaliatory. *Smart v. Cmty. Educ. Ctr., Inc.*, No. 16-2099, 2017 WL 187148, at *5 (D.N.J. Jan. 17, 2017).

Here, the Court finds that Plaintiff has set forth sufficient evidence to state a plausible claim that he engaged in constitutionally protected conduct with regard to the first prong of his retaliation claim. The First Amendment protects a prisoner's speech when it relates to matters of "public concern and not simply a matter related to the prisoner's personal interest." *Simon v. Mullgrav*, No. 15-278, 2018 WL 4562767, at *4 (V.I. Super. Sept. 19, 2018) (citing *McElroy v. Lopac*, 403 F.3d 855, 858 (7th Cir. 2005).

Plaintiff contends that at some point during his first stay in administrative segregation from December 24, 2013, until January 8, 2014, he witnessed a fellow inmate, Robert Taylor's health decline until Mr. Taylor laid on the floor in blood, feces, and urine, with discolored extremities and unable to eat, for several days. (ECF No. 48-6, at 67). Plaintiff contends that jail staff ignored his and Mr. Taylor's cries for help, leading to Mr. Taylor's death. Plaintiff then submitted a number of letters to the press and other persons detailing the events and conditions leading to Mr. Taylor's death, but testified that only one letter had reached its intended recipient in addition to

another letter "given to Edward Forchion . . . [who] forwarded the letter to various news media outlets." (ECF No. 48-2, at 5; ECF No. 42-2, at 6, ¶¶ 4–6).

Courts have found that letters to the press involving conditions of incarceration are generally a matter of "public concern." *E.g.*, *Pearson v. Welborn*, 471 F.3d 732, 740 (7th Cir. 2006); *Spruytte v. Hoffner*, 181 F. Supp. 2d 736, 742 (W.D. Mich. 2001); *cf. Simon*, 2018 WL 4562767 at *4 (finding same in the context of verbal complaints to visiting officials). Accordingly, the Court concludes that Plaintiff's letters regarding jail conditions and the resulting death of an inmate are protected speech as a matter of public concern.

Next, Plaintiff must show that he suffered an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct. The parties agree that Plaintiff received a sanction of fifteen days in administrative segregation,[5] sometime after sending the letters to the news media. (ECF No. 48, at 11–12). Because confinement to administrative segregation can constitute an adverse action, the Court finds that Plaintiff could plausibly satisfy the second element of a First Amendment retaliation claim. *See Szemple v. Talbot*, 141 Fed. App'x 52, 54 (3d Cir. 2005) (citing *Allah v. Seiverling*, 229 F.3d 220, 225–26 (3d Cir. 2000)).

Turning then to the final element, Plaintiff testified at his deposition that jail officials intercepted most of his letters detailing the death of Mr. Taylor, and that the incident with Defendant Artis occurred the day after Mr. Forchion delivered Plaintiff's letter to the media on January 28, 2014. (ECF No. 42-4, at 12). Plaintiff testified that during that incident, Defendant Artis told Plaintiff to keep his "fucking mouth shut" and that he "don't know what he saw," prior

---

[5] As discussed above, Plaintiff's brief also contends that Defendants directed officers to beat him prior to restraining and sending him to administrative segregation but offers no competent evidence as to the beating. As a result, the Court will only address Plaintiff's claim that a sanction of fifteen days in administrative segregation constitutes an adverse action.

to having officers restrain and send Plaintiff to administrative segregation pending a disciplinary hearing (ECF No. 42-4, at 13). In light of such testimony, the Court finds that the day or two between the release of Plaintiff's letter to the media and the allegedly retaliatory actions is sufficiently suggestive of a "causal link" and that a genuine issue of material fact exists as to Defendant Artis' knowledge of Plaintiff's letters. *E.g., Smart*, 2017 WL 187148, at *5; *Jordan*, 2013 WL 3810577, at *4.

Although Defendant Artis' deposition testimony, the disciplinary hearing records, and some parts of the video conflict with some of Plaintiff's testimony on the incident, the Court may not weigh evidence or assess credibility at the summary judgment stage and must draw all reasonable inferences from the record in favor of the non-movant. *Cotton*, 572 U.S. at 657. Thus, at this stage, Defendants' denials and explanations do not satisfy their burden to show that no genuine issue of material fact exists on Plaintiff's First Amendment retaliation claim, at least as to Defendant Artis.

The Court does not, however, reach the same result with Defendant Nunn. Unlike Defendant Artis, Plaintiff fails to identify evidence to demonstrate that Defendant Nunn subjected, or caused others to subject Plaintiff to a deprivation of rights under the First Amendment. For example, Plaintiff does not allege that Defendant Nunn ordered others to intercept Plaintiff's mail, or otherwise initiated the second disciplinary hearing.

Plaintiff's evidence against Defendant Nunn appears to involve only Plaintiff's first term in administrative segregation from December 24, 2013, until January 7, 2014, during which Defendant Nunn served as supervisor, and during which Plaintiff observed Mr. Taylor's declining health and death. (ECF No. 48-2, at 6). Plaintiff fails to offer evidence or otherwise allege that Defendant Nunn had any involvement or supervisory capacity over the officers who restrained

Plaintiff on January 29, 2014, or the disciplinary hearing resulting in Plaintiff's second term of administrative segregation. Consequently, regardless of however callous or deliberately indifferent Defendant Nunn may have been to Mr. Taylor, Plaintiff fails to raise a genuine issue of material fact as to whether Defendant Nunn violated *Plaintiff's* rights.

Lastly, the Court will address Plaintiff's conclusory implication, that "Plaintiff was beaten up while in solitary confinement" in retaliation "for not keeping his mouth shut," during his second term of administrative segregation (ECF No. 48, at 24). Plaintiff's argument appears to rest on a theory of supervisor liability, but fails to specify any evidence that Defendants Nunn or Artis "established or maintained a policy, practice or custom which directly caused [the] constitutional harm" or otherwise violated his "rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinates' unconstitutional conduct." *Luzerne*, 372 F.3d at 586; *Moore*, 2018 WL 1203470, at *4.

After a review of the record, although Plaintiff infers, during his deposition, that unknown guards permitted an unidentified inmate to attack Plaintiff in retaliation, Plaintiff has failed to identify any competent evidence to connect Defendants Nunn and Artis with the actions of those unnamed guards. (ECF No. 42-4, at 15). Accordingly, Plaintiff fails to raise a genuine issue of material fact, to the extent that he claims Defendants Nunn and Artis permitted an inmate to beat him in solitary confinement.

## V. CONCLUSION

For the foregoing reasons, the Court will **GRANT IN PART** Defendants' motion for summary judgment. The Court will enter summary judgment in favor of Defendant County of Burlington as to all claims, in favor of Defendant Nunn as to all claims, and in favor of Defendant Artis as to all claims, with the exception of Plaintiff's First Amendment retaliation claim against Defendant Artis. An appropriate order follows.

Dated: November 7, 2018

                                                        s/Robert B. Kugler
                                                        ROBERT B. KUGLER
                                                        United States District Judge